| | |
|---|---|
| **VASHONDA FOSTER**, <br><br> Plaintiff, <br><br><br> vs. <br><br> **AFNI, INC.**, <br><br> Defendant. | 2:18-CV-12340-TGB <br><br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Plaintiff Vashonda Foster claims that Defendant AFNI, Inc., a debt collector, reported information that it knew or should have known was false to Trans Union, violating the Fair Debt Collection Practices Act at 15 U.S.C. § 1692 et seq. ("FDCPA"), Michigan Collection Practices Act at M.C.L. § 445.251 et seq. ("MCPA") and the Michigan Occupational Code at M.C.L. § 339.901 et seq. ("MOC"). ECF No. 1. But because there is no evidence from which a jury could conclude that AFNI knew or should have known that the information it provided regarding the debt was incorrect, Defendant is entitled to summary judgment in its favor. Therefore, for the reasons stated in greater detail below, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

# I. Background

On July 15, 2017, Defendant AFNI, a debt collector, sent a letter to Plaintiff Foster in an attempt to collect a $315 debt owed to Comcast. ECF No, 23-2, PageID.118–19. Plaintiff did not respond to the letter. On December 29, 2017, Plaintiff "obtained her Trans Union credit disclosure"[1] and saw an entry indicating that she owed Defendant a $315.00 debt. ECF No. 1, PageID.2. Five-and-a-half months later, on May 16, 2018, Plaintiff sent a letter to Defendant disputing the debt. ECF No. 23-2, PageID.121. Defendant received the letter on May 22, 2018. *Id.* at PageID.97.

On May 27, 2018, in response to her dispute letter, Defendant reported Plaintiff's debt to Trans Union with the "Compliance Condition Code[2] XB," which indicated that Plaintiff disputed the debt. ECF No. 23-2, PageID.104, 137. The Compliance Condition Codes, which Defendant

---

[1] Contrary to the specific allegation contained in her complaint, Plaintiff did not actually obtain her "Trans Union credit disclosure." The record shows that she obtained a "Credit Karma" summary of her Trans Union credit report. ECF No. 23-2, PageID.160-61. This summary was not created by Trans Union.

[2] Defendant contends that the "Data Furnisher Announcement Reporting of Compliance Condition Codes of the Credit Data Industry Association is "adopted industry-wide and gives guidelines as to how data furnishers should report information to the credit reporting agencies when data furnishers receive disputes from a consumer." ECF No. 23-1, PageID.69.

contends it uses to communicate with credit reporting agencies like Trans

Union include the following, which are reproduced from the record:

| XB | Account information has been disputed by the consumer directly to the data furnisher under the Fair Credit Reporting Act (FCRA); the data furnisher is conducting its investigation.<br><br>*Definition: Reported when the completeness or accuracy of the account information is disputed directly to the data furnisher by the consumer under the FCRA and investigation of the dispute is in progress by the data furnisher.*<br><br>**Important Note: Code XB should no longer be reported after the investigation is completed; the XB should be removed by reporting the removal code or changed to another code.** |
| --- | --- |
| XC | Completed investigation of FCRA direct dispute — consumer disagrees<br><br>*Definition: Reported when the investigation of an FCRA dispute made by the consumer directly to the data furnisher has been completed by the data furnisher; however, the consumer disagrees with the outcome of the investigation.* |
| XH | Account previously in dispute; the data furnisher has completed its investigation. (To be used for direct disputes under the FCRA, FDCPA disputes or FCBA disputes)<br><br>*Definition: Reported when the investigation of a dispute by the data furnisher was completed.* |

ECF No. 23-2, PageID.132-33. On June 1, 2018, Defendant concluded its

investigation into Plaintiff's dispute and on the following day sent a letter

to Plaintiff that said:

> We received your dispute regarding the above
> referenced matter. We investigated your dispute
> and updated our account records as necessary.
> This letter serves as verification of the account.

ECF No. 23-2, PageID.97-98, 129. The letter also included information

about the Comcast debt itself, and a copy of the Comcast bill showing an

overdue amount of $315.24. ECF No. 23-2, PageID.125–28. It also

included a toll-free phone number for Defendant and an invitation to call

with "any questions regarding this account[.]" ECF No. 23-2, PageID.129.

Plaintiff does not dispute that Defendant mailed this verification letter to her. ECF No. 26, PageID.324 ¶15.

On June 3, 2018, Defendant updated its report to Trans Union, now listing Plaintiff's account under the compliance condition code "XH" (debt previously in dispute, investigation completed), rather than "XB," (debt disputed by consumer and under investigation), as they had before. ECF No. 23-2, PageID.139. The XH code indicated that the account was "previously in dispute" and that "the data furnisher ha[d] completed its investigation." *Id.* at PageID.133. When Plaintiff again obtained her Trans Union credit report[3] on July 14, 2018, she discovered that the trade line associated with Defendant was reporting the alleged debt with a status of "Dispute resolved; reported by grantor." ECF No. 24-4, PageID.236. Plaintiff did not respond to Defendant's June 2, 2018 letter conveying the results of the investigation and the proof of the Comcast bill.[4] Nor did Plaintiff complain or take any efforts to reach out to Defendant after obtaining her July 14, 2018 credit report from Credit Karma. ECF No. 26, PageID.324 ¶18. Instead, Plaintiff initiated the instant lawsuit against Defendant alleging that Afni reported to Trans Union that Foster no longer disputed the alleged debt when it knew or should have known that even though Defendant concluded its

---

[3] Again, this was a "Credit Karma" summary of her Trans Union credit report, rather than the Trans Union report itself.

[4] At the hearing on the parties' cross motions for summary judgment, counsel for Plaintiff conceded that Plaintiff received the June 2, 2018 letter from Defendant.

investigation, Plaintiff still disputed the debt. She brings claims under the FDCPA, the MOC, and the MCPA. Defendant now moves for summary judgment on all of Plaintiff's claims. ECF No. 23. Plaintiff moves for partial summary judgment only as to her FDCPA claim. ECF No. 24. The Court held a hearing on both motions.

## II. Standard of Review

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that

there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252.

## III. Analysis

### A. Article III Standing

#### i. Concrete Injury

Defendant maintains that Plaintiff has not shown a concrete injury of the kind necessary to have standing to sue under the Constitution. Article III, § 2 of the Constitution extends the judicial power of the United States "only to 'Cases' and 'Controversies.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting U.S. Const. Art. III, § 2). Standing "ensure[s] that federal courts do not exceed their authority" and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* Standing is a jurisdictional requirement. *See Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912,

915 (6th Cir. 2002). Thus, if a plaintiff does not have standing, the court lacks subject matter jurisdiction. *See Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). To establish standing, a plaintiff must meet the minimum threshold of having "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547. "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Therefore, at the pleading stage, general factual allegations of injury may be sufficient. *Id.* However, in response to a motion for summary judgment "the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts' which for purposes of the summary judgment will be taken as true." *Id.* (internal citations omitted). Injury-in-fact is the "[f]irst and foremost" element of the standing inquiry; "[a]n injury in fact must be real, not abstract, actual, not theoretical, concrete, not amorphous." *Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 462 (6th Cir. 2019) (citing *Spokeo II*, 136 S. Ct. at 1548).

Here, Plaintiff asserts a concrete injury in the form of (1) harm to her credit score and ability to obtain credit, and (2) emotional distress in that she alleges she "suffered from stress, anxiety, frustration, and other forms of emotional distress as a result of AFNI's refusal to report its trade line as disputed and instead reporting that the dispute has been resolved." ECF No. 26, PageID.325. Under *Spokeo,* Foster asserts that her allegations of various forms of emotional distress and credit impact are sufficient to show that AFNI's procedural violation caused a concrete injury that confers Article III standing. 136 S. Ct. at 1548-49.

But at the summary judgment stage, Plaintiff must come forward with more than bare allegations of a concrete injury to confer Article III standing. *Lujan*, 504 U.S. at 561. In support of her allegations of emotional distress, Plaintiff relies on a declaration she filed alongside her motion for partial summary judgment. *See* ECF No. 24-2, PageID.232 ¶8. But this declaration is not personally signed by Plaintiff (it is merely signed electronically) and does not indicate that she gave counsel the permission to sign on her behalf electronically. Because of these infirmities, Plaintiff's declaration may not be considered as Rule 56(e) evidence. *Johnson v. Ford Motor Co.*, No. 17-11412, 2019 WL 78893, at *7 n.3 (E.D. Mich. Jan. 2, 2019) (collecting cases) ("A declaration of a non-attorney bearing only an electronic signature does not comply with [this Court's Electronic Filing Policies and Procedures, Revised May 2018, Rule 9(d),(f).]") (Borman, J.); *McMahon v. Regents of the Univ. of Mich.*,

No. 14-11211, 2015 WL 6437155, at *6 n.4 (E.D. Mich. Oct. 22, 2015) (refusing to consider as Rule 56(e) evidence an unsigned declaration in part because it lacked a signature from the declarant which failed to comport with the Court's EFPP, Rule 9) (Drain, J.). If this declaration is excluded, there is no evidence in the record supporting Plaintiff's allegations of emotional distress. At summary judgment, where Plaintiff must come forward with more than bare allegations, Plaintiff's proofs of a concrete injury pursuant to *Spokeo* fall short.

As for Plaintiff's allegations that she suffered harm to her credit score and ability to obtain credit, Plaintiff relies on her inadmissible declaration and her Credit Karma reports indicating that AFNI reported her debt as "dispute resolved" rather than "disputed." ECF No. 26, PageID.326. Plaintiff appears to argue that the mere presence of dispute remarks on a trade line will possibly improve her credit score while Defendant's having changed its reporting from "disputed" (using code "XB") to "dispute resolved" (using code "XH") could have caused Plaintiff's credit score to be negatively impacted. ECF No. 26, PageID.326 (citing *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 150 (4th Cir. 2008) (explaining that the *plaintiff presented evidence at trial* that "when a furnisher responds to a dispute verification form and relates an ongoing dispute, Trans Union records the dispute in the credit report and does not include the derogatory information in assessing the credit score"); *Toliver v. Experian Info. Sols., Inc.*, 973 F. Supp. 2d 707, 725 (S.D.

Tex. 2013) (where, at summary judgment, the *plaintiff produced credit score reports* showing her credit score for Experian dropped from 694 to 618 in a matter of two weeks following the removal of a consumer dispute notation); *FTC v. First Guar. Mortg. Corp.*, No. 09-61840, 2011 WL 1233207, at *18 (S.D. Fla. Mar. 30, 2011 (where, at summary judgment, FTC expert testified that "disputing truthful information would at best only result in temporary removal of the disputed items while credit reporting agencies investigated them; and that any improvement in credit scores resulting from such disputes would be temporary")).

Despite Plaintiff's reliance on these cases, each can be distinguished for the same reason. In *Saunders*, *Toliver*, and *FTC*, *evidence was provided in the record* demonstrating that a consumer dispute notation could impact a credit score. Plaintiff here provides no such evidence. Even assuming the Credit Karma summaries could be admissible,[5] only one report gives any indication of Plaintiff's credit score. ECF No. 23-2, PageID.160. That report is dated December 29, 2017, approximately five months before Defendant initially reported Plaintiff's debt as disputed with the code "XB" on May 27, 2018 (ECF No. 23-2, PageID.104, 137) and also before Defendant changed the notation to "XH" on June 3, 2018 indicating that the dispute was resolved (ECF No. 23-2, PageID.139). The remaining two Credit Karma summaries, one dated July 14, 2018 and the other undated, merely show that the trade line was

---

[5] The Court makes no holding as to the admissibility of the Credit Karma summaries.

being reported as "dispute resolved; reported by grantor;" they do not give any indication of Plaintiff's credit score so it is not possible to say whether it improved or declined after the debt was reported as dispute resolved. ECF No. 24-4 (July 14, 2018 report); ECF No. 23-2, PageID.164 (undated report).

Because the record is devoid of any evidence from which a jury could find that Plaintiff's credit score changed because Defendant failed to report her debt as disputed, or that she suffered emotional distress, Plaintiff has not shown a concrete harm to confer Article III standing.

### ii. Whether violation of the FDCPA alone confers standing

Alternatively, Foster asserts that AFNI's violation of Plaintiff's FDCPA rights alone should be sufficient to confer standing. Under this theory, the FDCPA, as well as the Michigan Occupational Code ("MOC"), protect Plaintiff's concrete interests in "the reporting of accurate information in Plaintiff's credit reports" and the violation actually harms, and presents a serious risk of harm, to those interests. ECF No. 26, PageID.328.

With respect to statutory FDCPA violations, the Sixth Circuit has held that post-*Spokeo*, only certain kinds of statutory violations will be sufficient in and of themselves to confer Article III standing:

> [S]tatutory violations . . . fall[] into two broad categories: (1) where the violation of a procedural right granted by statute is sufficient in and of itself to constitute concrete injury in fact because Congress conferred the procedural right to protect a plaintiff's concrete interests and the procedural violation

presents a material risk of harm to that concrete interest; and (2) where there is a "bare" procedural violation that does not meet this standard, in which case a plaintiff must allege "additional harm beyond the one Congress has identified." *Spokeo*, 136 S. Ct. at 1549.

*Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 756 (6th Cir. 2018). "The Court also explained that both tangible and intangible injuries, as well as a 'risk of real harm' could 'satisfy the requirement of concreteness.'" *Id.* at 753 (quoting *Spokeo*, 136 S. Ct. at 1549).

In *Macy*, the Sixth Circuit assumed arguendo for purposes of standing that the plaintiff's allegations constituted a procedural violation of § 1692g(a)-(b). 897 F.3d at 757. Assuming such a procedural violation, the court went on to analyze the character and history of § 1692g and concluded that it codified a procedural right designed by Congress to protect consumers' concrete interests. *Id.* Because Congress promulgated § 1692g to protect consumers' concrete rights, the Sixth Circuit held that a violation of § 1692 *alone* presented a material risk of real harm to that concrete interest, thus conferring Article III standing. *Id.*

The FDCPA provision at issue here is § 1692e(8), which prevents a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, *including the failure to communicate that a disputed debt is disputed.*" And here, the risk of harm being alleged—failing to report a debt as

disputed—"is precisely the type of harm—abusive debt collection practices—the FDCPA was designed to prevent." *Macy*, 897 F.3d at 760; *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 346 (7th Cir. 2018) (finding, at summary judgment, that the allegation that a defendant failed to report a debt as disputed carried the real risk of credit reporting agencies lowering their credit scores, therefore conferring Article III standing); *Thaar v. Nationwide Collection Agencies, Inc.*, 2019 WL 1768869, at *3 (E.D. Mich. Mar. 4, 2019); *Paz v. Portfolio Recovery Assocs., LLC*, 2016 WL 6833932 at *3 (N.D. Ill. Nov. 21, 2016) (finding Article III standing where plaintiff alleged procedural violation of § 1692e(8)). Because the failure to report a debt as disputed is precisely the type of harm the FDCPA was designed to protect, the Court finds that Plaintiff's allegations of a statutory violation of § 1692e(8) alone confers Article III standing.

However, whether Plaintiff is capable of raising a genuine issue of material fact as to Defendant's knowing failure to report the debt as disputed is a different question that will be left for the consideration of the merits of Plaintiff's FDCPA claim. *Macy*, 897 F.3d at 759 (citing *Rocky Mountain Helium, LLC v. United States*, 841 F.3d 1320, 1325 (Fed. Cir. 2016) ("[A] merits determination is not a permissible one for the standing analysis, which assumes the merits of a litigant's claim.")).

## B. Fair Debt Collection Practices Act

The FDCPA prohibits any debt collector from using "false representation[s] or deceptive means" to collect a debt, including by "[c]ommunicating, or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). To establish a claim under the FDCPA, "(1) plaintiff must be a 'consumer' as defined by the Act; (2) the 'debt' must arise out of transactions which are 'primarily for personal, family or household purposes;' (3) defendant must be a 'debt collector' as defined by the Act; and (4) defendant must have violated '§1692e's prohibitions.'" *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012) (quoting *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F.Supp.2d 914, 926 (N.D. Ohio 2009)). To determine whether a debt collector's conduct runs afoul of the FDCPA, "[c]ourts must view any alleged violation through the lens of the 'least sophisticated consumer'—the usual objective legal standard in consumer protection cases." *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 450 (quoting *Gionis v. Javitch, Block, Rathbone, LLP*, 238 Fed. App'x. 24, 28 (6th Cir. 2007)). The objective standard "serves a dual purpose: 'it (1) ensures the protection of all consumers, even the naïve and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic

interpretations of collection notices.'" *Id.* at 450 (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993)).

"In addition, in applying this standard, we have also held that a statement must be materially false or misleading to violate Section 1692e." *Wallace*, 683 F.3d at 326-27; *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596-97 (6th Cir. 2009) (applying a materiality standard to a Section 1692e claim that was based on alleged misstatements in legal pleadings). "The materiality standard simply means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer." *Wallace*, 683 F.3d at 327.

Here, Defendant contends that the evidence is not sufficient to raise a material question of fact regarding two of the elements that would need to be proven to make out Plaintiff's FDCPA claim: (1) the debt arises out of transactions that are "primarily for personal, family or household purposes," and (2) Defendant violated one of § 1692e's prohibitions, that is, that Defendant "communicate[d] to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." ECF No. 23-1, PageID.77-78. Plaintiff's FDCPA claim fails as a matter of law on the second element but not the first.

First, Defendant argues that the evidence before the Court does not present a genuine issue of material fact that the $ 315.00 Comcast bill at issue here was incurred for personal, family or household purposes (i.e.,

that it was a consumer debt). Plaintiff's points to her electronically signed declaration as evidence purporting to establish the nature of the debt. (ECF No. 26, PageID.331) Unfortunately for Plaintiff, however, as described above, that declaration may not be considered as Rule 56(e) evidence. But the record also contains Plaintiff's three Credit Karma credit summaries, each of which list the "Responsibility" for the Comcast account as an "Individual" account. Viewed in the light most favorable to the non-moving party, this evidence is sufficient to at least create a genuine issue of material fact as to whether the Comcast account on Plaintiff's credit report was primarily for "personal, family, or household purposes" under the FDCPA. *Good v. FFCC Columbus, Inc.*, No. 14-508, 2015 WL 11122105, at *5 (S.D. Ohio, Aug. 17, 2015). Accordingly, Defendant's first argument is not well taken.

Second, Defendant contends that this record does not disclose a genuine issue of material fact concerning whether Defendant either knew or should have known, when it reported the dispute as resolved, that it was actually still disputed by the consumer—which must be shown to prove the knowledge requirement in 1692e(8). "[T]he 'knows or should know' standard of § 1692e(8) 'requires no notification by the consumer . . . and instead depends solely on the debt collector's knowledge that a debt is disputed, regardless of how that knowledge is acquired.'" *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 347 (7th Cir. 2018)

(quoting *Brady v. Credit Recovery Co., Inc.*, 160 F.3d 64, 67 (1st Cir. 1998)).

It is worth noting that § 1692e(8) turns not only on the perspective of the "least sophisticated consumer," but also on the state of mind of the debt collector. While it is clear that whether a debt collector used "false, deceptive or misleading representation[s] or means" to collect a debt must be analyzed by determining whether the least sophisticated consumer would be deceived because the focus is on the *consumer,* § 1692e(8) focuses on the knowledge of the debt collector. This provision asks whether the *debt collector* has communicated or threatened to communicate credit information *"which is known or should be known to be false* including the failure to communicate that a disputed debt is disputed." *See Evans*, 889 F.3d at 347. "Thus, the statute generally requires that [to be held liable] the debt collector [must] have knowledge of the dispute, yet report the debt without noting its disputed status" to show a violation of § 1692e(8). *Good*, 2015 WL 11122105, at *5 (citing *Statements of General Policy or Interpretation Staff Commentary On the FDCPA*, 53 FR 50097-02 (Dec. 13, 1988) (granting summary judgment to defendant debt collector under § 1692e(8) where plaintiff had no evidence that Defendant had knowledge of plaintiff's dispute)).

Here, there is no disagreement in the record that Defendant reported Plaintiff's debt as disputed when it first received Plaintiff's dispute letter. ECF No. 23-2, PageID.137 (indicating with the code "XB"

that Plaintiff disputed the debt). It knew the debt was disputed and reported it. Again, "XB" states:

| | |
|---|---|
| XB | Account information has been disputed by the consumer directly to the data furnisher under the Fair Credit Reporting Act (FCRA); the data furnisher is conducting its investigation.<br><br>*Definition: Reported when the completeness or accuracy of the account information is disputed directly to the data furnisher by the consumer under the FCRA and investigation of the dispute is in progress by the data furnisher.*<br><br>**Important Note: Code XB should no longer be reported after the investigation is completed; the XB should be removed by reporting the removal code or changed to another code.** |

*Id*. Nor do the parties dispute that this reporting complied with § 1692e(8). *See Fulton v. Equifax Info. Servs., LLC*, No. 15-14110, 2016 WL 5661588, at *3 (E.D. Mich. Sept. 30, 2016) (noting that "Plaintiff's dispute was internally noted on Plaintiff's account . . . and was communicated to Equifax by use of the 'XB' compliance code"). Rather, Foster argues that once Defendant completed its investigation of the dispute, confirmed the Comcast account belonged to Plaintiff, and concluded that she still owed the $315 debt to Comcast, it was a violation of § 1692e(8) for Defendant to change the code from "XB" to "XH" which states:

| | |
|---|---|
| XH | Account previously in dispute; the data furnisher has completed its investigation. (To be used for direct disputes under the FCRA, FDCPA disputes or FCBA disputes)<br><br>*Definition: Reported when the investigation of a dispute by the data furnisher was completed.* |

ECF No. 23-2, PageID.133. Plaintiff argues this despite the fact that "XB" expressly states that "XB" "should no longer be reported after the investigation is complete." *Id*. at PageID.132.

Foster argues that the "XH" code is false because in stating that the account was "previously" in dispute, it suggests that Plaintiff no longer disputes the debt when in fact she does. But Plaintiff elected not to respond to Defendant after receiving notice that AFNI had concluded its investigation, and she never told Defendant that she still disputed the debt. ECF No. 26, PageID.324; ECF No. 23-2, PageID.97 (McKeighan Affidavit). Indeed, the only evidence of Plaintiff's intention to continue to dispute the debt is her electronically signed declaration from March of 2019 that, as discussed above, may not be considered as Rule 56 evidence. ECF No. 26, PageID.332 (citing ECF No. 24-2, ¶6).

Plaintiff argues that the only communication Defendant ever received from her was the dispute letter, so it was incorrect for AFNI to report anything other than that the account was in dispute, regardless of whether it had concluded its internal investigation of the account. Plaintiff says that she had no responsibility to respond to the letter Defendant sent informing her of the conclusion of their review, and that Defendant should have assumed she still disputed the account. Plaintiff says that Defendant should have continued using code "XB" or possibly switch to code "XC"[6] which provides:

| XC | Completed investigation of FCRA direct dispute — consumer disagrees |
| | *Definition: Reported when the investigation of an FCRA dispute made by the consumer directly to the data furnisher has been completed by the data furnisher; however, the consumer disagrees with the outcome of the investigation.* |

---

[6] Plaintiff did not raise the possibility of reporting the "XC" code until oral argument.

Notably, the description for code "XH" includes nothing about whether the debtor agrees with the outcome or acquiesces to the debt. Code "XC," on the other hand, is to be used when the furnisher has completed its investigation, but "the consumer disagrees with the outcome of the *investigation*." ECF No. 23-2, PageID.132. Plaintiff argues that this would have been a more accurate code, if not "XB," because she was still disputing the debt.

First, the Court does not accept Plaintiff's argument that Defendant was wrong to remove the "XB" code; the Compliance Codes expressly state that "XB" "should no longer be reported after the investigation is complete" and here, Defendant had completed its investigation. *Id.* Further, Plaintiff misunderstands the "XC" code's description. That code applies where the consumer disagrees with the *outcome of the investigation,* but here, Defendant had no way of knowing whether Plaintiff disagreed with the outcome of the investigation because Plaintiff never told Defendant that she disagreed. After receiving the letter from Defendant indicating that it concluded that debt was valid, Plaintiff did not communicate any disagreement with the investigation. Instead, she filed this lawsuit. On this record, Defendant could not have had knowledge that Plaintiff disputed the outcome of its investigation.

Plaintiff argues that Defendant should have understood her original dispute of the debt to mean that she also disputed the outcome

of the investigation and also disputed any resolution that involved her owing the debt. But she did not communicate this to Defendant at any point. Her original and singular dispute letter contained exactly one sentence: "I dispute the above account that you are reporting on my credit files." ECF No. 23-2, PageID.121. Plaintiff provides no authority for why this single statement—which, notably, does not specifically dispute the debt, but refers rather to the "above account"—should operate in perpetuity, despite action and response by Defendant. Plaintiff's argument would hold that this one letter renders the account "in dispute" for as long as she neglected to respond to Defendant's correspondence. This is untenable, and contrary to the purpose of § 1692e(8) of the FDCPA, which protects consumers from debt collectors who communicate, or threaten communicate to any person credit information which is *known or which should be known to be false.*" (Emphasis added).[7]

When Plaintiff disputed her account, Defendant reported the dispute under code "XB" (accuracy of debt is in dispute and under investigation). Upon resolution of its investigation, Defendant reported that the investigation was now complete, using code "XH" (account previously in dispute, investigation completed) because according to the

---

[7] Similarly, Plaintiff's statement in her inadmissible declaration – filed as an exhibit to her Motion for Partial Summary Judgment – does not show that Defendant knew or should have known that she still disputed the debt. ECF No. 24-2.

Compliance Codes "XB" "should no longer be reported after the investigation is completed." ECF No. 23-2, PageID.132. AFNI never received any indication from Plaintiff that she disputed the result of the investigation. Plaintiff does not dispute that these are the codes Defendant used, or that they were used in the manner that Defendant says. None of the codes reported by Defendant were false or inaccurate as they were the most appropriates codes to use, based on the Compliance Codes from the CDIA. *See Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 838 (E.D. Va. 2017) (finding that continuing to report the code "XH" "create[d] a materially misleading impression" because the consumer continued to dispute the account was his "*as evidenced by the fact that he continued to submit* [*Automated Consumer Dispute Verifications*]") (citing *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008)). And the Chief Compliance Officer and a custodian of records for Defendant, McKeighan submitted an affidavit that "AFNI did not update the reporting of the debt using a different code," say "XC" for example, "[b]ecause AFNI *did not receive any communication following its verification*" of Plaintiff's Comcast account. ECF No. 23-2, PageID.97 (emphasis added).

Plaintiff argues that Defendant was not obligated to follow the Compliance Codes, and using them is not a defense to Plaintiff's claims. ECF No. 26, PageID.334. But Plaintiff's argument misses the point. Regardless of which code Defendant used, Plaintiff has not created a

genuine issue of material fact that Defendant knew or should have known that the debt was still disputed because Plaintiff concedes that she never responded to or contested the results of Defendant's investigation. Moreover, Plaintiff provides no authority or contrary evidence in the record to dispute the affidavit of AFNI's Chief Compliance Officer that the Compliance Codes "are codes adopted by the industry that give[] guidelines as to how data furnishers such as AFNI should report information to the credit reporting agencies when data furnishers receive disputes from a consumer." ECF No. 23-2, PageID.96.

Plaintiff also offers no support for her position that a consumer does not need to dispute the results of a debt collector's investigation to show that she continues to contest the debt for purposes of a § 1692e(8) claim—and the Court is unable to locate such authority. The Court has discovered some instances where district courts have found a § 1692e(8) violation where the debt collector attempted to defend its failure to report a dispute by claiming that the dispute was not valid. *Gomez v. Portfolio Recovery Assocs., LLC*, 2016 WL 3387158, at *4 (N.D. Ill. June 20, 2016) ("The FDCPA did not obligate Portfolio to report the Debt as disputed only if in retrospect Portfolio determined that the dispute was justified. . . . Portfolio cannot avoid liability by contesting the validity of the dispute."); *Paz v. Portfolio Recovery Assocs., LLC.*, 2016 WL 6833932, at *5 (N.D. Ill. Nov. 21, 2016). This is because "[t]he FDCPA does not limit that reporting obligation to disputes the furnisher believes to be valid."

*Mohamed v. Select Portfolio Servicing, Inc.*, 215 F. Supp. 3d 85, 96-97 (D.D.C. 2016). But in each case in this posture, the debt collector failed to report the debt as disputed from the outset and attempted to retroactively defend a clear § 1692e(8) violation by claiming the debt was valid. This is not the case here. In this case, Plaintiff acknowledges that Defendant initially reported correctly that the debt was disputed by using the "XB" code. And Plaintiff offers no proof that AFNI knew or should have known that she still disputed the debt following the investigation.

Based on the above, the Court finds that the only reasonable interpretation that the "least sophisticated consumer" could reach after receiving a letter from a debt collector confirming that the consumer owed the debt would be to realize that the collector believed the debt was valid, and that if the consumer disagreed, she should respond by reaffirming her dispute of the debt and the reasons for disputing it. *See Wood*, 277 F. Supp. 3d at 838. Particularly where, as here, Plaintiff has not argued that any specific language in Defendant's notice affirming the Comcast account was false or misleading.

In sum, there is no genuine issue of material fact as to whether Defendant knew or should have known that when it reported that the debt was previously in dispute and the investigation had been completed, that in fact Plaintiff was still disputing the debt, and that its report was therefore false or misleading. Plaintiff concedes she did not respond to

the results of Defendant's investigation or otherwise give Defendant any indication that she disputed the results of AFNI's investigation. Therefore, there is no genuine issue of material fact as to whether Defendant provided false or misleading information to Trans Union in violation of § 1692e(8) by changing its Compliance Condition Code from "XB" to "XH" following the conclusion of its investigation.

Because there is no genuine issue of material fact as to whether Defendant violated one of § 1692e's prohibitions, Plaintiff's FDCPA claim must fail. The Court therefore **GRANTS** Defendant's motion for summary judgment as to Plaintiff's Count I and **DENIES** Plaintiff's motion for partial summary judgment.

### B. Claim under Michigan Occupational Code

Plaintiff also brings a claim under the Michigan Occupational Code ("MOC"). The MOC provision alleged here, M.C.L. § 339.915(q), is violated when an employer "fail[s] to implement a procedure designed to prevent a violation by an employee." Here, because the Court finds that Defendant properly reported the disputed debt and reported the conclusion of its investigation, there was no "violation by an employee." *Green v. Midland Funding, Inc.*, No. 16-13029, 2018 WL 1146877, at *3 (E.D. Mich. Jan. 29, 2018), *report and recommendation adopted*, No. 16-13029, 2018 WL 1141800 (E.D. Mich. Mar. 2, 2018) (because plaintiff's MOC claim was premised on the allegation that defendant did not report the debt as disputed, the court's finding that the defendant properly

reported the disputed debt meant there was no "violation by an employee" under the MOC). Thus, Plaintiff's claim under the MOC fails as a matter of law. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's Count II.

## C. Claim under Michigan Collection Practices Act

Plaintiff abandons her final claim against Defendant under the Michigan Collection Practices Act, stating that she pled this claim and her claim under the MOC in the alternative to each other and Defendant concedes it is a "collection agency" under the MOC. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's Count III.

## IV. Conclusion

Accordingly, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

DATED: March 31, 2020.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge